IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAPSTONE BUILDING CORP., | ) |
| PLAINTIFF, | ) |
| VS. | )       2:06-cv-639-JHH |
| AMERICAN MOTORIST INSURANCE COMPANY, INC. as successor in interest for AMERICAN PROTECTION INSURANCE COMPANY, | ) ) ) |
| DEFENDANT. | ) |

## MEMORANDUM OF OPINION

The court has two motions of defendant American Motorist Insurance Company, Inc. (AMICO) as successor in interest for American Protection Insurance Company. The first motion is the January 15, 2007 motion (doc. # 16) of defendant for summary judgment.¹ The second motion is the April 3, 2007 motion (doc. #35) of defendant entitled "motion to strike Count I of the complaint." In addition to those motions, on March 6, 2007, the court presented the parties with a problem under Federal Rule of Civil Procedure 19 of failing to join an indispensable party. (See doc. #30.)

---

¹ Pursuant to the court's January 16, 2007 order, the motion was deemed submitted, without oral argument, on February 13, 2007.

## I. Procedural History

Plaintiff Capstone Building Corporation (CBC) commenced this action on April 4, 2005 by filing a complaint in the Circuit Court of Jefferson County, Alabama, against Kemper Insurance Company. The complaint contains three counts: (1) declaratory relief; (2) breach of contract; and (3) bad faith. On March 3, 2006, in response to changes regarding the owner of the insurance policy, CBC amended its complaint in the state court to add AMICO as a defendant. Upon service of the amended complaint, AMICO removed the action to this court based on diversity jurisdiction.[2] Defendant's motion for summary judgment asserts plaintiff's claims fail as a matter of law. Defendant's motion to strike count I contends that "the declaratory relief sought has been subsumed into the breach of contract alleged in Count II . . . and is therefore an unnecessary duplication of the breach of contract claim." (Doc. #35 at 1.)

The parties submitted multiples briefs and evidence in relation to the two pending motions and issue under Rule 19. With regard to the motion for summary judgment, defendant submitted a brief and evidence[3] (doc. # 21) in support of its

---

[2] Without objection from the plaintiff, the court dismissed Kemper as a defendant. (See Doc. # 5.) Thus the actual parties to this action remain CBC as the only plaintiff and AMICO as the only defendant.

[3] The defendant submitted the following evidence: Reliance Policy "Insuring Agreement"; excerpts of deposition of Jimmy Shaw; UConn Demand Letter dated 09/29/2004;

own motion for summary judgment on January 23, 2007. On February 6, 2007, plaintiff filed a brief (doc. # 23) and evidence[4] (doc. # 24) in opposition to defendant's motion for summary judgment. On February 13, 2007, defendant filed a brief and evidence[5] (doc. # 26) in reply to plaintiff's opposition.[6]

Then, on March 6, 2007, the court issued an order (doc. #30) directing the

---

excerpts of deposition of Chapman; Automatic Additional Insureds - Endorsement; Business Risk Exclusions; Affidavit of Belle Scott; CBC Meeting notes dated 6/21/2000; construction contract; CBC plumbing subcontract; excerpts of deposition of Stevens; excerpts of deposition of John McGregor; Letter from UConn to Travelers dated 9/24/2004; excerpts of deposition of Chris Travis; Policy "Legal Action Against Us" clause.

[4] The plaintiff submitted the following evidence: construction contract; excerpts of deposition of Jimmy Shaw; affidavit of Bonney Hebert; Reliance National Insurance Company Policy # NGB6021801; letter of certificate of liability insurance; affidavit of Chris Travis; excerpts of deposition of Chris Travis; 4/29/2000 CBC letter; Superior Fire Protection Subcontract; Eastern Mechanical Subcontract; 11/1/2000 Accordia Letter; excerpts of deposition of John McGregor; various Kemper Company documents; 9/24/2004 UConn letter; excerpts of deposition of James Hawkins; 10/20/2004 e-mail; 12/6/2004 denial letter; 12/2/2004 e-mail from Kate Tammaro; 5 letters from Mark Hogewood; 1/4/2005 e-mail from Paul Meany; 1/20/2005 letter from Mark Hogewood with attachments; 3/2/2005 letter from Mark Hogewood with attachments; 8/15/2005 letter from Mark Hogewood with attachments; 8/25/2005 letter from Mark Hogewood with attachments; 4/28/2006 letter from Mark Hogewood with attachments; 5/16/2006 letter from Mark Hogewood with attachments; 5/19/2006 letter from Mark Hogewood with attachments; 11/1/2006 letter from Mark Hogewood with attachments; 12/20/2006 letter from Mark Hogewood with attachments; 1/11/2007 letter from Mark Hogewood with attachments; complaint for declaratory judgment - AMICO v. CDC; 5/31/2006 letter from Tom Ellis; response to motion to dismiss - AMICO v. CDC.

[5] The defendant submitted the following evidence: excerpts of deposition of Chris Travis; excerpts of deposition of Jimmy Shaw; "Supplemental Condition" CBC 5101-5102.

[6] Defendant also filed a motion (doc. #27) to strike portions of the affidavit of Chris Travis and portions of the affidavit of Bonney Harris which were filed by defendant as evidence in opposition to the motion for summary judgment. For reasons that will become clear, the motion to strike (doc. #27) is **MOOT**.

parties to show cause why the complaint should not be dismissed without prejudice under Federal Rule of Civil Procedure 19.  On March 30, 2007, plaintiff filed a brief (doc. #32) to the court's order.  On April 3, 2007, defendant filed a response (doc. #34) to plaintiff's brief.  With that response, defendant also filed the motion (doc. #35) to strike count I of the complaint.  On April 5, 2007, plaintiff filed a response (doc. #36) to defendant's motion to strike.  That same day, defendant filed a reply (doc. #37) to plaintiff's response.

## II.  Relevant Undisputed Facts[7]

From the evidence and briefs submitted by the parties, it appears that the University of Connecticut contracted with Capstone Development Corporation (CDC) to build the University's Hilltop Apartments.  (See Pl.'s Ex. 26.)  The Hilltop Apartments project was part of a phase of construction designated as "UConn 2000 Phase II" that involved several different construction projects at the University.  (See Pl. Ex. 3.)  CDC then entered into a construction contract with plaintiff Capstone Building Corporation (CBC)[8] which incorporated the "supplementary conditions" from the contract between CDC and the University.

---

[7] If the facts are in dispute, they are stated in a manner most favor to the non-movant. See Fitzpatrick, 2 F.3d at 1115.

[8] Although the names are similar, it is unclear whether CDC and CBC are related entities. At the very least, the evidence is clear that they are separate corporations.

(See Pl. Ex. 1.)  Those supplementary conditions governed, among other things, insurance and dispute resolution for the project.  (Id. at Arts. 7 & 10.)  The contract designated the owner of the construction project as the University of Connecticut and the architect, Demarest & Associates.  (Id.)

The University purchased insurance on the UConn 2000 Phase II project, including liability insurance, for itself, the designer and builder, and "subcontractors of all tiers."  (Pl. Ex. 1 at 7.2.1.2)  Acordia Northeast, Inc., an insurance broker for the University, established and administered an owner controlled insurance program (OCIP)[9] for the University.  (Pl. Ex. 3.)  As relevant to this case, Acordia brokered coverage with Reliance National Insurance Company (Reliance) with the named insured "UCONN 2000 PHASE II OCIP." (See Pl. Exs. 3-4.)  Various parties involved in the Hilltop Apartments project, including CBC and CDC, enrolled in the UCONN 2000 PHASE II OCIP.  (Shaw Dep. at 80, 90, 92, 155; Pl. Ex. 3.)  Effective February 2001, through novation, American Protection Insurance Company (American Protection), a company under the Kemper Insurance Companies (Kemper) trade name, replaced Reliance as the

---

[9] An OCIP, or Owner Controlled Insurance Program, is an insurance policy (also sometimes known as Wrap Up Policy) taken out by the owner of the property where construction is taking place.  Instead of each individual contractor securing his own liability and/or worker's comp and/or other insurance for the project, the owner secures an OCIP that covers all construction and contractors on the project.

primary insurance carrier for the University of Connecticut OCIP. (See Pl. Ex. 11.) Defendant AMICO became the successor in interest to American Protection in late 2005. (McGregor Dep. at 15-17, 34.) Thus, CBC and CDC became insureds in the American Protection OCIP policy brokered and administered for the University by Acordia with UCONN 2000 PHASE II OCIP as the named insured.

     The project apparently progressed as expected and was substantially completed on August 23, 2001. (Shaw Dep. at 238.) In August 2001, the architect, Demarest & Associates, certified that the project was in compliance with the Connecticut Building and Fire Safety Codes, and CBC certified that the project had been constructed in substantial compliance with the approved construction documents. (See Pl. Ex. 26.) The University then occupied the buildings with students. (See id.)

     In August 2004, the University discovered numerous problems with the apartments, including, but not limited to, elevated levels of carbon monoxide caused by the design and installation of the hot water heaters. (See Pl. Exs. 14, 26.) On September 29, 2004, the University sent a letter to CDC, with a copy to CBC, Demarest Architecture, and the engineer on the project, complaining about the numerous problems discovered with the apartments. (Pl. Ex. 3.) The letter

stated that the University was "giv[ing] notice of and assert[ing] its claims against" CDC, Demarest & Associates, Radford Engineering, and CBC "for reimbursement and indemnification for any and all costs, expenses and damages incurred or suffered, or to be incurred or suffered" regarding the problems discovered. (Id.) The University "estimated that these costs, expenses and damages will exceed $650,000.00." (Id.) The letter further asked each party (CDC, CBC, the architects and engineering firm) to "acknowledge its responsibility for this claim . . . by October 13, 2004," to forward the letter to "any applicable insurance carrier" and to notify the University "of each insurance carrier and a representative of each with whom to communicate directly." (Id.)

CBC notified Acordia as the administrator and broker of the OCIP of the claim asserted against it by the University. (Travis Dep. at 57-59; Hawkins Dep. at 80-81, 185.) AMICO's third party claims administrator, Broadspire, received notice of the September 29, 2004 demand letter from Acordia. (Id.) Broadspire employed independent counsel to advise as to the proper response to the notice of a claim. (Id.; Def.'s Ex. 16.) On December 6, 2004, Broadspire, on behalf of AMICO, notified CBC that "there can be no coverage to [CBC] for this matter per its status as an additional insured under the policy." (Pl. Ex. 17.) From December 15, 2004 until the filing of the complaint in state court on April 4, 2005,

counsel for CBC sent at least five letters to Broadspire contesting the denial. (Pl. Ex. 19.) CBC, through counsel, also sent Broadspire additional information and details concerning the University's claims. (Pl. Exs. 21-22.)

### B. The Complaint

Then, on April 4, 2005, CBC filed the instant complaint in the Circuit Court of Jefferson County, Alabama. The complaint contains three counts. The first count, for declaratory relief, asks the court "to declare that the subject insurance policy obligates Kemper to provide coverage to Capstone for the University's claims and contentions against Capstone." The second count, breach of contract, alleges that AMICO "breached the terms of the . . . insurance policy in denying coverage" to CBC. It further alleges that CBC "has suffered damages in the form of, among other things, costs, expenses and fees it has had to and will have to pay in addressing [UConn]'s claims." The third count, bad faith, alleges that AMICO "denied coverage . . . without any reasonably legitimate, arguable or debatable reason" and "failed to adequately investigated this matter before declining coverage. As such, [AMICO] has violated its duty of good faith and fair dealing with its insured."

### C. Events Occurring After the Complaint was Filed

After the filing of the complaint, the University continued to supplement

8

and provide further details concerning its claims related to the apartment project. (See Pl. Exs. 23-25, 27-29.)  On May 15, 2006, the University sent a letter to CDC, with copies to the other parties, which letter invoked the Dispute Resolution provision of the contract between the University and CDC and demanded mediation with a number of parties, including CBC and CDC.  (Pl. Ex. 26.)  The letter set out a detailed description of each claim, with the total amount of $23,270,000.00 claimed as of the date of the notice. (Id.)

A few days later, on May 31, 2006, AMICO filed a complaint in this court against CDC, and the case was assigned to Judge Acker.  Am. Motorist Inc. Co., Inc. v. Capstone Development Corp., Inc., 2:06-cv-1032-WMA.  AMICO's complaint seeks a declaration that it has "no responsibility, coverage, protection, or obligation or liability to pay any sums or perform any acts on behalf of [CDC] for the claims asserted by [the University of Connecticut] under the policy of insurance."  Id. at doc. #1.  It is undisputed that the insurance policy in that case is the exact insurance policy involved in this case.

Apparently, while these two actions were pending, the University, CBC and CDC, among others, took steps to begin mediation of the underlying claims.  (See Pl. Ex. 28.)  For instance, on or about December 28, 2006, the University provided CDC with a Revised Demand for Mediation and Summary of Claims.  (Pl. Ex. 30.)

The record does not show whether the mediation has taken place and, if so, the status of the process.

### III.  Analysis

The court divides it analysis into two parts.  First, the court will discuss the equitable remedy sought by the complaint, a declaration of rights.  Second, the court will discuss the legal remedies sought by the complaint through the breach of contract and bad faith claims.

*A.  Declaratory Judgment*

For the reasons set forth in the March 6, 2007 order (doc. #30), the court is still convinced that the claim for declaratory judgment is due to be dismissed without prejudice under Federal Rule of Civil Procedure 19 for failure to join an indispensable party.  See Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd, 129 Fed. App. 540 (11th Cir. 2005); Ranger Ins. Co v. United Housing of New Mexico, Inc., 488 F.2d 682 (5th Cir. 1974); Cent. Sur. & Ins. Corp. v. Norris, 103 F.2d 116 (5th Cir. 1939); Cent. Sur. & Ins. Corp. v. Caswell, 91 F.2d. 607 (5th Cir. 1937); Earnest v. State Farm Fire & Cas. Co., __ F.Supp.2d __, 2007 WL 575673 (N.D.Ala. Jan. 17, 2007).  The court notes that neither party presented any persuasive argument to the contrary.  Indeed, the defendant did not even address the court's concerns regarding Rule 19 in its brief.  (See doc. #34.)

In the alternative, if the court is incorrect that the University of Connecticut is an indispensable party, the court declines to accepts jurisdiction over the claim for declaratory relief.  The Declaratory Judgment Act grants to trial courts a measure of discretion in determining whether or not to entertain a suit for declaratory relief even though jurisdiction is present.  <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 494 (1942); <u>Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.</u>, 577 F.2d 264, 266 (5th Cir. 1978).  In exercising this discretion, the court is influenced by one key factor: the University of Connecticut would undoubtedly be affected by any ruling of this court.  In addition, any ruling by this court regarding the rights of the parties under the contract would likely affect the case filed by AMICO against CDC, since the contract between AMICO and CDC is identical to the contract between AMICO and CBC.

As such, count I of the complaint for declaratory relief is due to be, and by separate order will be, dismissed without prejudice.  This decision renders defendant's motion (doc. # 35) to strike count I of the complaint **MOOT**.

*B.  Breach of Contract and Bad Faith*

As stated earlier, the complaint also alleges in count II a claim for breach of contract and in count III a claim for bad faith.  Although AMICO does not express its argument in these terms, AMICO's primary contention is that these claims are

11

not ripe for adjudication or are inchoate claims or inchoate causes of action.[10]  The court agrees.  The complaint alleges that AMICO breached the insurance contract by "denying coverage" to CBC.  However, when the lawsuit was filed, there was nothing for AMICO to cover; there was no "suit" as defined by the policy.  (See Pl.'s Ex. 4 at 13.)  CBC essentially concedes as much in its opposition brief when it argues that AMICO had a duty to defend CBC when, in May 2006, the University presented a mediation demand, which CBC contends "meets the definition of a 'suit' under the" insurance policy.  (Pl. Opp. Br. at 23.)  This mediation demand, whether or not it meets the definition of a "suit," occurred thirteen months <u>after</u> the complaint was filed in this case.  It cannot be the basis for either the breach of contract or bad faith claims.

At the time the complaint was filed in this case, the issues were not fit or ready for judicial decision.  That they may have become ready with the passage of time since the filing of the complaint does not change the court's decision, where, as here, the law of the State of Connecticut must be applied.[11]  The relevant law is clearly set forth in <u>Walter H. Goodrich & Co. v. Friedman, et al.</u>:

---

[10] AMICO frames its argument under the rubric that there is no "case or controversy" under the facts alleged in the complaint.

[11] The result would be the same under Alabama law.  See <u>Allstate Life Ins. Co. v. Parker</u>, __ So.2d ___, 2006 WL 2216739 (Ala. 2006).

> It is a general rule that the nonexistence of a cause of action at law when the suit is brought is a fatal defect, which cannot be cured by the accrual of a right of action while the suit is pending. In other words, an action at law can be supported only on the facts as they existed when the action was commenced.

102 A. 607, 608 (Conn. 1917). Connecticut is not alone in stating its "case or controversy" or "ripeness for adjudication" rule in this strong fashion. See 1A C.J.S. Actions § 235.

Accordingly, the court will grant defendant's motion (doc. #16) for summary judgment by dismissing counts II and III, but such dismissal will be without prejudice. A separate order will be entered.

### IV. Conclusion

In summary, the court concludes that count I of the complaint is due to be dismissed without prejudice for failure to join an indispensable party. In the alternative, the court declines to entertain its discretionary jurisdiction over count I. As to counts II and III, the court concludes that there is no dispute as to any material fact and that those claims or causes of action plead in the complaint were nonexistent and not ripe for adjudication when the complaint was filed. A separate order will be entered dismissing the entire complaint without prejudice.

**DONE** this the   17th   day of April, 2007.

*/s/ James H. Hancock*
SENIOR UNITED STATES DISTRICT JUDGE

13